Golia, J.P.,
dissents and votes to reverse the judgment and dismiss the complaint in the following memorandum: The admissible evidence established at trial below presents to me an *14 entirely different set of facts and circumstances from those set forth in the majority opinion.
Plaintiff commenced the underlying action to recover $38,400 that she claimed as damages due her as a result of the defendant’s failure to properly repair the subject automobile, a 2002 Toyota RAV 4. The gravamen of her claim is that the defendant performed certain automotive services on the vehicle and approximately IV2 weeks later the vehicle broke down on the New Jersey Turnpike and was towed to a Toyota dealer in the State of Delaware.
In support of her claim a document was entered into evidence which consisted of an unsworn report or “estimate” which contained the statement that “when they first looked at her car it looks like ... a spark plug was put in incorrectly . . . after further review they noticed that the engine was starving from oil.” The trial record leaves it unclear as to why this report was written in the “third person,” that is “they noticed” rather than “I found.” Consequently, not only was this report unsworn and not subject to cross-examination, but it is also rank hearsay. In addition to that report, the trial court accepted a two-page invoice dated October 25, 2003 generated by this defendant concerning the service performed on the subject vehicle as well as other notations.
At trial the plaintiff testified that she brought the subject SUV to the defendant due to her concern over a “check engine” light that came on. Although the plaintiff testified that all activities and communications with the defendant were done by her personally, the defendant’s invoice entered by the plaintiff in evidence shows that all the documents concerning the repairs as well as the refusal to authorize certain repairs were signed by a Mr. William Negron who is purportedly the plaintiffs son, and who did not testify at trial below.
A careful examination of the record establishes that at no point during the presentation of the plaintiff’s case did the plaintiff present any expert testimony or offer any other evidence in admissible form to establish the necessary elements of her case.
Her first failure was to establish that her car “broke down” due to the fact that her engine seized. The documents entered as her first exhibit (which was not preserved for review by this court) clearly do not rise to the level required to establish the initial predicate fact for this case to proceed, that is, that the car “broke down” due to a seized engine. This plaintiff is *15 certainly competent to testify that she was driving the car and that at some point the engine stopped running. Indeed she could even testify as to the noises it made, what physically happened such as “bucking,” “rattling,” “clanging” or anything else she observed as the driver, assuming she was the driver. However, absent a qualified expert, she cannot establish that the engine seized, let alone that it seized as the result of oil deprivation. This failure is in addition to the fact that the “report” itself is inadmissable for the reasons set forth above.
The trial court asserts that the expert witness called by the defendant presented sufficient expert testimony to meet the plaintiffs burden. However, even the most cursory review of the testimony by defendant’s expert makes it clear that the trial court was in error in making such finding.
The defendant’s expert testified that the documents generated by the defendant and offered by the plaintiff establish that the plaintiff had been put on notice that the brake pads were down to zero and dangerous and that the oil had come “out thick and black and dirty” concluding the oil had been overheated and the entire system needed to be flushed out. The expert further testified that the customer declined to have either the brakes or the “oil flush out” repair done.
Defendant’s expert, Mr. Scarpaci, further testified under cross-examination that oil starvation can lead to seizing of an engine, and that the Toyota dealer in Delaware (Price Toyota) sent a fax to the defendant explaining their findings. That testimony was based upon an assumption of facts not in evidence. At that point the trial judge interjected with the following:
“the court: I don’t know if the engine ceased [sic]. Is that the terminology that was used by Price Toyota?
“the witness: That’s correct.”
Somehow thereafter the trial court determined that simply because a Delaware Toyota dealer made an unsworn statement that was not subject to cross-examination in a facsimile, it now becomes evidence in the case.
The trial court then inquired of the defense expert whether the documents submitted indicate that the defendant informed the plaintiff that there was something wrong with the oil. The expert directed the court’s attention to that portion of the documents which shows that the plaintiff was told that the auto needed a “bilstein oil flush” because of the thick, black and dirty oil condition.
*16 The trial judge then expanded the rules of evidence beyond all recognition by making inquiry of the plaintiff, who was not a witness on the stand, was not sworn and was not subject to cross-examination. The judge asked whether she was told anything about the oil and Ms. Albarran replied that she was not told about the need for an oil flush and that the documents given to her had no mention of that finding. The facts and document in evidence prove otherwise. We also know that it was the plaintiffs son who signed the documents declining that service as well as the brake service and not this plaintiff.
In addition, the defendant’s expert testified that at the time that the car was presented to the defendant (prior to any repair), they found that the engine oil was thick and black and dirty concluding that the oil had been overheated and they needed to flush out the oil from the engine rather than merely drain the oil. This procedure is called a “bilstein oil flush” and defendant’s expert testified that a recommendation for a bilstein oil flush was contained in the documents signed for by the plaintiff’s son.
The trial judge then made inquiry of the plaintiff during some form of colloquy as to whether or not she was ever told about problems other than the brakes. The record indicates that she responded “[n]o.” The record does not indicate that the plaintiff was a sworn witness at the time or that she was subject to cross-examination or that a similar question was ever presented to her son who was the individual who signed all the pertinent documents, or that the son was ever present in the courtroom.
Nevertheless, the trial court, in my estimation, wrongly accepted her “[n]o” as competent evidence and proof that she was not so informéd.
In fact, the competent evidence actually establishes that prior to the mechanical service in question, the plaintiff, by her account, had the oil changed in the subject automobile on three prior occasions, twice at an unspecified Toyota dealership and another time by an unspecified individual.
Why the trial court did not conclude that the “seized engine” problem was not the result of one of these three oil services is beyond me. This is especially so since the subject automobile displayed signs of oil deprivation at the time it was first presented to the defendant. In addition, I am unaware of any evidence presented to establish that the “30,000-mile checkup” included replacement of the spark plugs as found by the trial court or for that matter any expert testimony to the effect that *17 “damaged thread on the #1 cylinder spark plug” would cause an engine to seize. Indeed, the lack of probative and admissible evidence presented in favor of the plaintiffs case is overwhelming and is only surpassed by the amount of speculation and supposition by the trial court.
Considering all the evidence presented, and the lack of specific expert testimony to the contrary, I find that plaintiff failed to establish her claim by a fair preponderance of the credible evidence and therefore would dismiss the complaint.
Rios and Belen, JJ., concur; Golia, J.E, dissents in a separate memorandum.